**METERLOGIC, INC., a Florida corporation, Plaintiff,**

v.

**COPIER SOLUTIONS, INC., a Missouri limited liability company, Telemetry Solutions, a Delaware limited liability company, KLT Telecom, Inc., a Missouri corporation, KLT, Inc., a Missouri corporation, and Kansas City Power and Light Company, a Missouri corporation, Defendants.**

No. 99–7131–CIV.

United States District Court, S.D. Florida.

Sept. 27, 2000.

1348

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

GOLD, District Judge.

### Introduction

The plaintiff in this case is MeterLogic, Inc. ("MeterLogic"), a Florida corporation. The defendants are Copier Solutions, L.L.C. ("CS"), a Missouri limited liability company; Telemetry Solutions, L.L.C. ("TS"), a Delaware limited liability company; KLT Telecom, Inc. ("KLT"), a Missouri corporation; KLT, Inc. ("KLT, Inc."), a Missouri corporation; and Kansas City Power and Light Co. (KCPL), a Missouri corporation. MeterLogic has filed a six count amended complaint against these defendants, as follows: Count I, Fraud (against CS, TS, KLT, KLT, Inc., and KCPL); Count II, Negligent Misrepresentation (against CS, TS, KLT, KLT, Inc., and KCPL); Count III, Promissory Estoppel (against CS, TS, KLT, KLT, Inc., and KCPL); Count IV, Indemnity (against CS and TS); Count V, Breach of Contract (against CS and TS); and Count VI, Pierce the Corporate Veil (against KLT, KLT, Inc., and KCPL). This court has subject matter jurisdiction under 28 U.S.C. § 1332.

MeterLogic claims monetary damages in the amount of $50,000,000.00 for CS's and TS's breach of contract, fraud, and misrepresentations. It claims that officers of CS and TS induced MeterLogic to enter into three related agreements by misrepresenting the economic and technological support that KLT, KLT, Inc., and KCPL (the "corporate parents" of CS and TS) would provide their business venture. MeterLogic seeks to hold KLT, KLT, Inc., and KCPL liable for their subsidiaries' misrepresentations. The corporate parents deny any responsibility for the statements made to MeterLogic by CS and TS officers.

Each defendant has filed a motion to dismiss the amended complaint. As grounds for their motions, KCPL, KLT, and KLT, Inc. contest this court's personal jurisdiction under Federal Rule of Civil

Stephen Howard Reisman, Miami, FL, Daniel J. Voelker, Chicago, IL, for Meterlogic, Inc.

Robert W. Turken, Miami, FL, for Copier Solutions, Telemetry Solutions, KLT Telecom, Inc. and KLT, Inc.

Marlene Koch Silverman, Mark Allan Salky, Miami, FL, for Kansas City Power, and Light Company.

Procedure 12(b)(2). They also contest the sufficiency of MeterLogic's fraud, negligent misrepresentation, promissory estoppel, and piercing the corporate veil claims under Federal Rule of Civil Procedure 12(b)(6). CS and TS seek to dismiss the counts filed against them under Federal Rule of Civil Procedure 12(b)(6), but they do not contest the court's jurisdiction. After carefully considering the pleadings, the affidavits, and the arguments of counsel, the court finds that in personam jurisdiction does not exist over KCPL, KLT, or KLT, Inc.; Counts IV and VI of the plaintiff's complaint shall be dismissed; and Counts I, II, III and V remain against CS and TS.

### The Facts

For purposes of these motions to dismiss, the court accepts the following facts as true, as gleaned from MeterLogic's amended complaint.[1]

### I. The Plaintiff

MeterLogic is a corporation organized and existing under the laws of the state of Florida with its principal place of business located in Florida at the time of the filing of the complaint. MeterLogic was, until recently, in the business of selling complete customer support for remote office equipment metering devices. MeterLogic is no longer in business.

### II. The Defendant's Corporate Structure

#### A. The Entities

CS manufactures remote metering and communications devices and provides metering services for copiers, fax machines, and printers. See Pl. Am. Compl. at ¶ 2. TS is the parent of CS. It is in the business of wireless telemetry and data acquisition. See Pl. Am. Compl. at ¶ 3. KLT, an investment company, is the majority shareholder of TS, and KLT is a wholly-owned subsidiary of KLT, Inc. See Pl. Am. Compl. at ¶¶ 3, 4. KLT, Inc. is a holding company for the nonregulated ventures of KCPL, which generates, transmits, and distributes electric energy. See Pl. Am. Compl. at ¶ 5. KLT, Inc., in turn, is a wholly owned subsidiary of KCPL, a publicly held corporation that is traded on the New York Stock Exchange. See Pl. Am. Compl. at ¶ 6. Each of the defendants is a Missouri entity. See Pl. Am. Compl. at ¶¶ 2–6.

#### B. The Individuals

Colin Dobell ("Dobell") is the managing member of CS and TS. Ron Wasson ("Wasson") and Mark English ("English") are officers and/or directors of TS. Charles Hawley ("Hawley") worked with Dobell to negotiate a contract between CS and TS and MeterLogic. While the complaint states that Hawley and Dobell told MeterLogic they were also employees of KCPL, KLT, and KLT, Inc., see Pl. Am. Compl. at ¶¶ 13, 16, the fact of Hawley's and Dobell's employment by these corporations is not alleged in the complaint.

Along with James Gilligan ("Gilligan"), Wasson and English are also the officers and/or directors of KLT and KLT, Inc. Finally, Wasson is an officer of KCPL, and Joseph G. Jacobs III ("Jacobs") is the Director of Business Development for KCPL.

#### II The Alleged Negotiations

In April of 1998, MeterLogic, through its president, Mary Ellen Marshall ("Marshall"), began discussing with potential business partners the possibility of entering into a venture to manufacture and sell certain remote metering and communications devices and to provide monitored metering services for copiers, fax machines, and printers to South Florida customers. Hawley contacted Marshall in December

---

1. The following facts are derived from the plaintiff's amended complaint. Additionally, the court relies on affidavits and correspondence submitted by MeterLogic, KCPL, KLT, and KLT in its discussion of the defendants' motion to dismiss based on lack of personal jurisdiction.

of 1998. He told Marshall that he was an officer and employee of CS, TS, KLT, and KLT, Inc., all of which were subsidiaries of KCPL, and that he was interested in entering into a joint sales and metering services venture with MeterLogic on behalf of all the defendant entities. *See* Pl. Am. Compl. at ¶ 13. According to MeterLogic's complaint, "Hawley never made any attempt to distinguish on whose behalf he was acting or speaking." Pl. Am. Compl. at ¶ 14.

On January 8, 1999, Hawley introduced Marshall via telephone to Dobell, who told Marshall that he too was an officer and employee of CS, TS, KLT, and KLT, Inc. *See* Pl. Amend. Compl. at ¶ 15. The parties met in Ft. Lauderdale, Florida on January 18, 1999, to discuss "a possible business relationship between MeterLogic and CS, TS, KLT, KLT, Inc., and KCPL." *See* Pl. Am. Compl., ¶ 17. The vice-president of MeterLogic, Dobell, and Hawley attended this meeting.

A few weeks later, Marshall, Dobell, and Hawley met again in Ft. Lauderdale to negotiate a draft of their agreement. Throughout these discussions, Hawley and Dobell told Marshall that KCPL, KLT, and KLT, Inc. were firmly behind their proposed business venture, had agreed to provide funding, and could provide the necessary technology. When Marshall asked Dobell and Hawley why only CS and TS were parties to the agreement with MeterLogic, and KLT, KLT, Inc., and KCPL were not, Dobell and Hawley responded that "while KLT, KLT, Inc., and KCPL would not be identified in the agreement by name, they had developed, tested, owned, and would be standing behind the technology ..., that they had agreed to fund both CS' and TS' business plans with MeterLogic, they would be involved in all of the business decisions and would assist MeterLogic with their knowledge and resources whenever necessary." Pl. Am. Compl. at ¶ 19.

### III. The Alleged Agreements

MeterLogic entered into its first agreement with CS and TS on March 31, 1999.

The remaining defendants were not signatories to this contract. The alleged agreement created an alliance between MeterLogic, CS, and TS to deliver retail monitoring devices for copiers, fax machines, printers, and other similar office equipment. Under the contract, CS was to act as the service provider and perform all field installations, TS was to assure CS's performance, and MeterLogic was to serve as the exclusive sales and marketing agent. The agreement was entered into by the parties in Florida. *See* Pl. Am. Compl. at ¶ 22.

A press release of April of 1999 announced the parties' alliance. The relevant language of the publication states:

> [CS] is a subsidiary of KLT, Inc., the non-regulated division of [KCPL]. [CS] is backed by the resources of the $3.1 billion [KCPL], one of the largest municipal electric utilities in the United States.... "We are pleased to have formed an alliance with MeterLogic to market these innovative automated metering products," said Charlie Hawley, Executive Vice President and General Manager of [CS].

Pl. Am. Compl. ¶ 28.

The parties' problems began when CS and TS failed to manufacture, develop, and sell the products that were the subject of their first agreement with MeterLogic. As a result of this, the parties entered into an addendum to their agreement on July 5, 1999, and a second agreement later that same month. These were designed to protect MeterLogic in the event of default by CS and TS.

### *Analysis*

### I. Personal Jurisdiction

Each of the corporate parents (KCPL, KLT, and KLT, Inc.) argues that the court must dismiss the complaint filed against it pursuant to Federal Rule of Civil Procedure 12(b)(2) because this court lacks in personam jurisdiction. According to the corporate parents, MeterLogic can-

not make the requisite showing under either Florida's long arm statute or the minimum contacts test of the Due Process Clause. The essence of their argument is that neither they nor their authorized agents committed any acts in Florida that would subject them to the court's jurisdiction. They argue that Hawley and Dobell had no authority to bind them to any of the acts of CS and TS. In response, MeterLogic contends that principles of agency and corporate piercing support a finding of in personam jurisdiction. Based upon the pleadings and the evidence submitted by the parties, the court agrees with the defendants and finds that it lacks personal jurisdiction over them. Accordingly, the court dismisses the complaint filed by MeterLogic as applied to KCPL, KLT, and KLT, Inc.

## A. Standard of Review

MeterLogic seeks to establish the court's jurisdiction under 28 U.S.C. § 1332, the diversity statute. A federal court sitting in diversity may only exercise personal jurisdiction over a nonresident defendant to the extent permitted by the forum state's long arm statute and if the exercise of jurisdiction comports with the requirements of due process. *See Vermeulen v. Renault U.S.A., Inc.*, 985 F.2d 1534, 1552 (11th Cir.1993). Because the reach of Florida's long arm statute is a question of Florida law, federal courts are required to construe the long arm statute as would the Florida Supreme Court. *See Oriental Imports and Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890 (11th Cir.1983); *Lauzon v. Joseph Ribkoff, Inc.*, 77 F.Supp.2d 1250, 1253 (S.D.Fla.1999).

Under Florida law, the plaintiff bears the burden of proving personal jurisdiction. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir.1996). In determining whether the plaintiff has established a prima facie case of personal

jurisdiction over the nonresident defendant, the court must accept the facts alleged in the plaintiff's complaint as true to the extent they are not controverted by the defendant. *See United States Securities & Exchange Comm'n v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir.1997). Once the plaintiff pleads sufficient material facts to support the court's exercise of personal jurisdiction, the burden shifts to the defendant to challenge the plaintiff's allegations by affidavits or other competent evidence. *See Lauzon*, 77 F.Supp.2d at 1253. When a nonresident defendant meets this burden, the plaintiff must substantiate the jurisdictional allegations in its complaint by affidavits, testimony, or documents. *See Future Technology Today, Inc. v. OSF Healthcare Systems*, 218 F.3d 1247, 1249 (11th Cir.2000). Where the evidence conflicts, the district court must view all reasonable inferences in the plaintiff's favor. *See Carrillo*, 115 F.3d at 1542.

## C. Florida's Long Arm Statute

 As mentioned above, a district court must engage in a two-part analysis in determining whether it has personal jurisdiction over a nonresident defendant. Jurisdiction must exist under Florida's long arm statute (Fla.Stat. § 48.193) and under Fourteenth Amendment due process analysis. *See Future Technology Today, Inc.*, 218 F.3d at 1249; *Lauzon*, 77 F.Supp.2d at 1253.[2] In its complaint, MeterLogic has asserted three bases for this court's in personam jurisdiction over the defendants: (1) the defendants carried on a business in Florida; (2) the defendants committed a tort in Florida; and (3) the defendants committed an act outside of Florida that caused injury to a Florida resident. MeterLogic derives these arguments from Fla. Stat. § 48.193, Florida's long arm statute. The relevant provisions read as follows:

**2.** Although this test is comprised of two parts, this order discusses only the first prong—whether jurisdiction exists under Florida's long arm statute. Because the court finds

MeterLogic has failed to satisfy the first requirement, it declines to discuss the constitutional prong.

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(b) Committing a tortious act within this state....

. . . . .

(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside of this state, if, at or about the time of injury, either:

1. The defendant was engaged in solicitation or service activities within this state; or

2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

Upon a review of the pleadings and supporting affidavits,[3] the court finds that MeterLogic has failed to allege and substantiate the necessary facts to provide the court with personal jurisdiction over any of the corporate parents under these provisions.

### 1. Carrying on a Business in Florida

■ It is clear from the affidavits submitted by the corporate parents that KCPL, KLT, and KLT, Inc. have never

had an office or agency in Florida as required by Fla. Stat. § 48.193(1)(a), and MeterLogic does not show otherwise. *See* Latz Affidavit at ¶¶ 5–7; Orman Affidavit at ¶¶ 6–12; Wasson Affidavit at ¶¶ 6–12. As a result, Fla. Stat. § 48.193(1)(a) authorizes jurisdiction over KCPL, KLT, and KLT, Inc. only if they were carrying on a business or business venture within Florida. In order to make such a showing, "[t]he activities of the [defendant] sought to be served ... must be considered collectively and show a general course of business activity in the State for pecuniary benefit." *Future Technology Today, Inc.*, 218 F.3d at 1249 (quoting *Sculptchair*, 94 F.3d at 627).

■ MeterLogic has not alleged that the corporate parents have *directly* carried on any activities within Florida, and it has failed to rebut their denial of doing business in the state. The affidavit submitted by KCPL in support of its motion to dismiss states, "KCPL has never done business with or had a relationship with MeterLogic in the State of Florida or any other state." Latz Affidavit at ¶ 5. KLT's and KLT, Inc.'s affidavits in support of their motions make similar statements. *See* Orman Affidavit at ¶¶ 6, 7; Wasson Affidavit at ¶¶ 6, 7.

If the corporate parents have never carried on a business venture in Florida directly, then MeterLogic can establish jurisdiction under Fla. Stat. § 48.193(1)(a) only if the corporate parents could be held responsible for their subsidiaries' (CS and TS) activities in Florida. The rule in this state is that the presence of a subsidiary corporation, such as CS or TS, within Florida is not enough to subject a nonresident parent corporation to the state's long arm

---

**3.** In support of its motion to dismiss based upon lack of personal jurisdiction, KCPL filed two affidavits from Jeanie Latz (senior vice-president of corporate services at KCPL) and one affidavit from Joseph G. Jacobs (a KCPL employee who began splitting his time between KCPL and CS after MeterLogic entered into its agreement with CS and TS). KLT filed the affidavit of Ronald Wasson (presi-

dent of KLT) in support of its motion, and KLT, Inc. filed the affidavit of Gregory Orman (president of KLT, Inc.). In response to each of the defendants' motions and affidavits, MeterLogic has filed the affidavit of Mary Ellen Marshall (president of MeterLogic), copies of various e-mails, and a letter from Jacobs to Marshall.

jurisdiction. *See Capital One Fin. Corp. v. Miller*, 709 So.2d 639 (Fla. 2d DCA 1998) (finding no personal jurisdiction over parent where plaintiff failed to file affidavit in support of jurisdiction). In order for a plaintiff to establish personal jurisdiction successfully over a parent corporation, that plaintiff must establish an agency relationship between the subsidiary and its employees and the parent. Alternatively, the plaintiff can show that it is proper for the court to pierce the corporate veil. As discussed below, MeterLogic has established neither an agency nor a piercing scenario. As such, it cannot establish jurisdiction under Fla. Stat. § 48.193(1)(a).

## 2. Committing a Tort in Florida

MeterLogic also argues that Fla. Stat. § 48.193(1)(b) provides the court with personal jurisdiction over the corporate parents. For personal jurisdiction to attach under the "tortious activity" subsection of Florida's long arm statute, MeterLogic must show that these defendants "committed a substantial aspect of the alleged tort in Florida." *L.O.T.I. Group Productions v. Lund*, 907 F.Supp. 1528, 1532 (S.D.Fla. 1995) (citing *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 857 (11th Cir.1990)). MeterLogic claims that the torts committed in Florida are fraud, negligent misrepresentation, and promissory estoppel. The court has reviewed the relevant pleadings and affidavits and has found no facts in the record from which it can conclude that KCPL, KTL, or KTL, Inc. engaged in any of these torts directly. Like Fla. Stat. § 48.193(1)(a) (the "carrying on a business prong" of Florida's long arm statute), whether MeterLogic can establish personal jurisdiction under the "tortious activity" subsection depends on whether it can establish an agency relationship between the corporate parents and CS/TS or facts suf-

ficient for this court to pierce the corporate veil. The next two sections address why MeterLogic has failed to make such a showing.

### a. Agency

In its opposition to the corporate parents' motions to dismiss, MeterLogic argues that this court has personal jurisdiction over the defendants because CS and TS were agents for the parent corporations and that this agency relationship necessitates piercing of the corporate veil. KCPL, KLT, and KLT, Inc. contend that there is insufficient proof from which the court can conclude that CS and TS (more specifically, Dobell and Hawley) were acting under the corporate parents' express or apparent authority when they were negotiating with MeterLogic.

 In order to establish an agency relationship in Florida, a party must show: (1) acknowledgment by the principal that the agent will act for it; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the actions of the agent. *See Keys Jeep Eagle, Inc. v. Chrysler Corp.*, 897 F.Supp. 1437, 1442–43 (S.D.Fla.1995) (citing *Goldschmidt v. Holman*, 571 So.2d 422, 424 n. 5 (Fla.1990)). MeterLogic has failed to allege in its amended complaint or establish by affidavits evidence of two of these requirements: acknowledgment by the corporate parents and control.

 **Acknowledgment:** MeterLogic has not established the first requirement for an agency relationship because it has not shown that KCPL, KLT, or KLT, Inc. acknowledged that CS or TS (more specifically, Hawley or Dobell) were acting act on their behalf.[4] The rule is clear that "[a]pparent authority does not arise from the subjective understanding of the person

---

4. The corporate parents do not deny that Hawley or Dobell claimed to have been acting on their behalf, but they do deny that they had the authority to do so. MeterLogic never refutes this denial. Instead, it continues to rely on its allegation that Hawley and Dobell

*said* they were authorized to act on behalf of the corporate parents. Interestingly, Dobell's representations are the source of a civil suit that has been filed by KLT against Dobell in a Missouri state court.

dealing with the purported agent, nor from the appearance created by the purported agent himself; instead, apparent authority exists only where the principal creates the appearance of an agency relationship." *Ja Dan, Inc. v. L–J, Inc.*, 898 F.Supp. 894, 900 (S.D.Fla.1995) (holding that agency relationship existed where principal paid plaintiff directly and written agreement stated agent was signing on behalf of principal); *Izquierdo v. Hialeah Hosp., Inc.*, 709 So.2d 187, 188 (Fla. 3d DCA 1998) (finding no apparent authority where defendant took no actions to create appearance of agency relationship).

▮ In this case, MeterLogic is arguing that apparent authority arose from the precise conduct that *Ja Dan* and *Izquierdo* tell us will not establish an agency relationship—the subjective understanding of the plaintiff and the appearance created by Dobell and Hawley.[5] It asserts that an agency relationship existed between CS and TS and the corporate parents because Dobell and Hawley (the only individuals with whom MeterLogic negotiated the con-

tract) indicated they were "acting and speaking on behalf of CS, TS, KLT, KLT, Inc., and KCPL." Pl. Amend. Compl., ¶¶ 14, 16. MeterLogic presents no evidence by affidavit or otherwise that KCPL, KLT, or KLT, Inc. confirmed the truth of Dobell's or Hawley's statements.[6] It has not pled that Dobell and Hawley were actually employees, officers, or directors of KCPL, KLT, or KLT, Inc. It has only alleged that they claimed to be. MeterLogic has not pled or shown that KCPL, KLT, or KLT, Inc. financed the business venture between CS and TS and MeterLogic or engaged in any conduct from which MeterLogic could conclude that the corporate parents were authorizing CS and TS to act on their behalf.[7] All of these are allegations that would have affirmatively established the court's personal jurisdiction. *Compare John Scott, Inc. v. Munford, Inc.*, 670 F.Supp. 344, 346 (S.D.Fla.1987) (finding apparent agency where principal financed agent's venture with plaintiff, participated in meetings, and paid agent's employees); *Ilgen v.*

5. Dobell and Hawley are the only individuals that traveled to Florida to negotiate on behalf of CS and TS. MeterLogic claims that it had telephone conversations with Joseph Jacobs (officer of KCPL and temporary manager of CS) and Mark English (officer of TS, KLT, and KLT, Inc.), both of whom were in Missouri. *See* Latz Affidavit ¶ 34. According to MeterLogic, these conversations, in addition to the representations made by Hawley and Dobell, led it to believe that KCPL, KLT, and KLT, Inc. were standing behind the agreements with CS and TS. Viewing this in the light most favorable to MeterLogic means that Marshall, as a representative of MeterLogic, had some long distance telephone conversations with officers of the parent corporations. It is important to note, however, that these conversations occurred after the alleged tortious conduct had occurred and after MeterLogic had entered into a contract with CS and TS. *See* Pl. Amend. Compl. at ¶ 35. Additionally, long distance telephone calls are not sufficient to confer personal jurisdiction under Florida's long arm statute. *See Musiker v. Projectavision, Inc.*, 960 F.Supp. 292 (S.D.Fla.1997).

6. The only evidence MeterLogic submits in support of its argument that the corporate parents authorized Dobell and Hawley to act

on their behalf is a statement by Mark English, an officer and director of KLT and KLT, Inc. On July 23, 1999 English told Marshall, the president of MeterLogic, "... the [KLT] representative .. will not assert that the contract is void because of the purported lack of authority of Colin Dobell to enter into the contract." Marshall Affidavit, ¶ 37. This statement does not support MeterLogic's argument because MeterLogic did not become aware of it until *after* the alleged tortious conduct occurred and the parties had entered into all of their agreements.

7. MeterLogic claims that a letter written by Joseph Jacobs on KCPL letterhead while he was managing CS shows that KCPL authorized CS to act as its agent. As discussed above, KCPL has stated, and MeterLogic has failed to refute, that Jacob's employment by CS was independent of his work at KCPL and occurred after the conduct in question. *See* Jacobs Affidavit at ¶¶ 1, 2. Additionally, Florida courts have held that logos or trademark symbols alone do not create an apparent agency. *See Mobil Oil Corp. v. Bransford*, 648 So.2d 119, 121 (1995); *Ilgen v. Henderson Properties, Inc.*, 683 So.2d 513, 514 (1996).

*Henderson Properties, Inc.*, 683 So.2d 513, 514–15 (Fla. 2d DCA 1996) (finding apparent agency where principal vouched for the quality of agent's work, was aware that name and logo appeared on contract between plaintiff and agent, and provided agent with principal's form contracts); *Universal Caribbean Establishment v. Bard*, 543 So.2d 447, 448 (Fla. 4th DCA 1989)(finding apparent agency where agent was exclusive tour operator for hotel parent and hotel managers met directly with plaintiff).

Not only has MeterLogic failed to submit sufficient proof of an agency relationship, but the corporate parents have submitted undisputed affidavits to establish that they never authorized Dobell, Hawley, CS, or TS to act on their behalf. For example, KCPL has stated that it never employed any of the individuals referenced in MeterLogic's complaint (English, Scott, Wasson, Gilligan, or Hawley), and it never permitted any of the individuals to act on behalf of KCPL regarding business ventures with MeterLogic. *See* Latz Affidavit, ¶ 11. KLT and KLT, Inc. similarly submit that no KLT or KLT, Inc. agent, employee, or representative has ever traveled to Florida to meet with MeterLogic or negotiate a business venture. *See* Wasson Affidavit, ¶¶ 17. Orman Affidavit, ¶¶ 17–19. Only one employee of KCPL (Joseph Jacobs) worked for CS, but this was not until July 27, 1999, which is after the alleged tortious conduct occurred and the parties had entered into the agreements. *See id.* at ¶ 12. Jacobs did not receive a salary from KCPL for the time he worked for CS, and MeterLogic has not presented any evidence to show otherwise. *See id.* KCPL also denies preparing or authorizing the press release that announced the business venture between MeterLogic and the "subsidiaries" of KCPL. *See id.* at ¶ 13. MeterLogic's failure to refute any of this evidence prevents it from establishing an agency relationship between CS and TS and their corporate parents.

**Control:** Even if MeterLogic were able to establish acknowledgment by the corporate parents, its agency argument still would fail because it has failed to establish by affidavits or otherwise that KCPL, KLT, or KLT, Inc. controlled CS and TS. Absent control of a subsidiary by a parent, there can be no finding of agency. *See American Tobacco Co.*, 707 So.2d at 854; *Parker v. Domino's Pizza, Inc.*, 629 So.2d 1026 (1993).

■ According to Florida courts, "the amount of control the parent exercises must be very significant." *American Tobacco Co.*, 707 So.2d at 855. One court has explained, "[T]he parent corporation, to be liable for its subsidiary's acts under the … agency theory, must exercise control to the extent the subsidiary 'manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation'." *Id.* (quoting *Vantage View, Inc. v. Bali East Development Corp.*, 421 So.2d 728, 733 (1982)); *see also Aquila Steel Corp. v. Fontana*, 585 So.2d 426, 427 (Fla. 3d DCA 1991) (stating that activities of subsidiary must be activities of parent for requisite degree of control to be found).

■ *John Scott, Inc. v. Munford, Inc.*, 670 F.Supp. 344 (S.D.Fla.1987) illustrates the high degree of control required by Florida courts to justify the exercise of jurisdiction over a corporate parent for the acts of its subsidiaries. In *John Scott*, the court found that the following activities established an agency relationship between the parent and its subsidiary:

the subsidiary received financing from the parent for the transaction that was the subject of the suit; the parents' employees were paid by the subsidiary for their work in connection with the transaction; the parent's annual reports referred to the subsidiary's manufacturing plants as its own; a representative of the parent corporation met with the plaintiff corporation to negotiate the transaction in question; purchase orders were sent to the parent corporation; the subsidiary acted on behalf of the parent in attempting to renegotiate prices of the contract; and an employee of the

parent had the power and exercised it in reviewing the contract entered into between the subsidiary and the parent. *American Tobacco Co.*, 707 So.2d at 855 (examining *John Scott*).

The facts alleged or otherwise supported by MeterLogic fall short of those established in *John Scott*. In support of its conclusory argument that CS and TS were the agents of KCPL, KLT, and KLT, Inc., MeterLogic alleges that Hawley and Dobell never made any attempt to distinguish whether they were acting on behalf of the corporate parents or their subsidiaries. Am. Compl., ¶¶ 14, 16. MeterLogic also states that Hawley and Dobell stated that they had the backing of KCPL, KLT, and KLT, Inc. *See* Am. Compl. ¶ 19. It is important to note, however, that MeterLogic fails to introduce any evidence of the parents' acknowledgment of this responsibility. According to MeterLogic's complaint and Marshall's affidavit, the only individuals that MeterLogic ever spoke with in Florida, and the only individuals that committed the alleged misrepresentations, were Hawley and Dobell. Nowhere in the complaint or in Marshall's affidavit does MeterLogic show that Hawley and Dobell are actually representatives or employees of the corporate parents or that the corporate parents ever acknowledged Hawley's and Dobell's activities during the time of their allegedly tortious conduct or during the time CS and TS and MeterLogic were negotiating the contracts.

In short, MeterLogic has failed to introduce any additional evidence or make allegations similar to the ones made by the plaintiff in *John Scott*, namely, that CS and TS received funding from KCPL, KLT, or KLT, Inc.; that the business activities of CS and TS and their parents overlapped; that it met with a representative of the parent (other than Dobell or Hawley, who, as discussed above, were only employees of CS and TS); or that the parents reviewed the contracts that are the subject of this dispute. Instead, what arises from the pleadings, motions, and affidavits filed in support of both sides' arguments is an image of corporate parents allowing their subsidiaries to run autonomously. *See* Latz 2d Affidavit, ¶ 6. Without an indication by MeterLogic that KCPL, KLT, or KLT, Inc. were more involved in the control of the day to day activities of their subsidiaries, this court cannot find that the plaintiff has satisfied the control requirement. *See American Tobacco Co.*, 707 So.2d at 856 (finding that plaintiff failed to allege requisite degree of control where parent did not control subsidiary's daily activities). As such, MeterLogic has failed to establish that an agency relationship existed between CS and TS and KCPL, KLT, and KLT, Inc., and it cannot avail itself of the doctrine of apparent authority to support an exercise of personal jurisdiction by the court pursuant to Fla. Stat. § 48.193(1)(a) or (b).

### b. Piercing the Corporate Veil

In addition to proceeding under an agency theory, a court may properly assume personal jurisdiction over a corporate parent if the plaintiff can show that the subsidiary is an alter ego of a parent corporation, such that the corporate veil can be pierced. In order for a court to pierce the corporate veil, a plaintiff must show (1) that the subsidiary is a mere instrumentality of the parent and (2) improper conduct. *See Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1320 (11th Cir.1998); *Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1117 (Fla.1984); *Advertects, Inc. v. Sawyer Industries, Inc.*, 84 So.2d 21, 24 (1955). Because MeterLogic has failed to allege or establish by affidavit or otherwise that CS and TS are the alter egos of KCPL, KLT, or KLT, Inc., the court cannot exercise personal jurisdiction over KCPL, KLT, or KLT, Inc. under Fla. Stat. § 48.193(1)(a) or (b).[8]

---

**8.** Because MeterLogic has not established the mere instrumentality requirement, the court does not discuss the second element (improper conduct) in its order.

In support of its argument that CS and TS are the mere instrumentalities of their corporate parents, MeterLogic alleges in its complaint that Dobell and Hawley, with whom it was negotiating the contracts that are the subject of this dispute, "never made any attempt to distinguish on whose behalf [they were] acting or speaking." Pl. Amend. Compl., ¶¶ 14, 16. It also alleges that KCPL, KLT, and KLT, Inc. all have the same principal place of business, 1201 Walnut Street, Kansas City, Missouri. Pl. Amend. Compl., ¶¶ 2–6. MeterLogic has submitted the affidavit of its president, Marshall, in support of these allegations.

KCPL, KLT, and KLT, Inc. have satisfied their burden of refuting both of MeterLogic's allegations. The affidavit of Jeane S. Latz, which was filed by KCPL in support of its motion to dismiss, states, "KCPL and its corporate subsidiaries maintain separate offices and bank accounts." Latz Affidavit, ¶ 8. MeterLogic has not introduced any evidence to contradict this. Latz's affidavit also states, "KCPL has not received any assets from any of its subsidiaries, including dividends. KCPL has not permitted any of these individuals ... [including Hawley] to act on its behalf regarding any transaction or business venture involving MeterLogic." Latz Affidavit, ¶ 11, 14. Latz's second affidavit states, "KCPL does not act in a supervisory capacity over its corporate subsidiaries' employees. KCPL has never shared space with [CS] or [TS]." Latz 2d Affidavit, ¶ 6, 7. Again, MeterLogic has failed to contradict these statements.

Even if the corporate parents had not met their burden, the sharing of a business address and the overlap of officers is insufficient to support a finding that the subsidiaries are the alter ego of their corporate parents. In *Advertects, Inc. v. Sawyer Industries, Inc.*, 84 So.2d 21 (1955), the Florida Supreme Court cautioned against using the piercing theory as a vehicle for harassing a corporation's stockholders. It stated:

The mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the conclusion that the corporate entity is a fraud or that it is necessarily the alter ego of its stockholders to the extent that the debts of the corporation should be imposed upon them personally. If this were the rule, it would completely destroy the corporate entity as a method of doing business and it would ignore the historical justification for the corporate enterprise system.

*Id.* at 24; *see also Lipsig v. Ramlawi*, 760 So.2d 170, 186 (Fla. 3d DCA 2000) (quoting *Advertects, Inc.* and stating that even if corporation is a mere alter ego of its shareholders, veil will not be pierced if corporation's separate entity was legally maintained). Additionally, the corporate parents have submitted affidavits that show that the entities acted separately. For example, KCPL has established, for the purpose of its motions to dismiss, that the entities maintain separate bank accounts and that they transact business in their own name. *See* Latz Affidavit, ¶ 8. MeterLogic has not refuted this statement.

Without more, KCPL, KLT, and KLT, Inc. are not subject to the court's personal jurisdiction under a theory of piercing the corporate veil. *See Hobbs v. Don Mealey Chevrolet, Inc.*, 642 So.2d 1149, 1156 (1994) (refusing to pierce corporate veil where parent's and subsidiary's funds were not commingled, parent maintained separate bank accounts, and parent transacted business in its own name). *Compare Nichols v. Paulucci*, 652 So.2d 389, 393–94 (1995) (finding jurisdiction over defendant where its president often traveled to Florida and monitored developments of Florida joint venture on daily basis, officers and directors of parent overlapped with that of joint venture, parent issued checks on behalf of Florida joint venture, parent's name was listed as customer on utility bill, parent paid for joint venture's expenses, and parent was guarantor of joint venture on a bank loan). Accordingly, the court has no personal jurisdiction over KCPL,

KLT, or KLT, Inc. under Fla. Stat. § 48.193(1)(a) or (b).

### 3. Causing Injury in Florida

██ As a final basis for jurisdiction, MeterLogic contends that Fla. Stat. § 48.193(1)(f) authorizes the court's exercise of personal jurisdiction over the corporate parents because MeterLogic's injuries occurred in Florida. MeterLogic's argument fails because Fla. Stat. § 48.193(1)(f) does not confer jurisdiction when the plaintiff's injuries are merely economic, as they are in this case. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 629 (11th Cir.1996); *Musiker v. Projectavision, Inc.*, 960 F.Supp. 292, 297 (S.D.Fla. 1997) (finding no basis for personal jurisdiction under Fla. Stat. § 48.193(1)(f) where plaintiff alleged only economic injury). Under this provision, a plaintiff must claim personal injury or property damage in its complaint. Because MeterLogic has failed to make such an allegation, Fla. Stat. § 48.193(1)(f) confers no basis for personal jurisdiction over KCPL, KLT, or KLT, Inc.

## II Failure to State a Claim

The remaining defendants, CS and TS, seek to dismiss Counts I (Fraud), II (Negligent Misrepresentation), III (Promissory Estoppel), and IV (Indemnity) under Federal Rule of Civil Procedure 12(b)(6). According to the defendants, MeterLogic has not alleged sufficient facts in its complaint to support each of these theories of recovery. The court concludes that MeterLogic has stated claims for Counts I, II, and III, but it has failed to state a claim for Count IV.

### A. Standard of Review

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with

the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir.1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir.1994). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir.1985) (citation omitted); *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir.1986). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief can be granted. *In re Complaint of Sea Vessel, Inc. v. Reyes*, 23 F.3d 345, 347 (11th Cir.1994) (citation omitted). Nevertheless, to survive a motion to dismiss, a plaintiff must do more than merely "label" his claims. *Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D.Fla.1996). Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993).

### B. Fraud

Count I of MeterLogic's amended complaint is for fraud against CS and TS.[9] CS and TS seek to dismiss this count under the following grounds: failure to plead with sufficient particularity under Federal Rule of Civil Procedure 9(b), the economic loss rule, presence of an integration clause in the agreement, and failure to satisfy the

---

9. MeterLogic has also filed this claim, along with claims for negligent misrepresentation and promissory estoppel, against KCPL, KLT, and KLT, Inc., but, as discussed in the preceding section, the court lacks personal jurisdiction over those defendants.

elements of a claim for fraud. After carefully considering the parties' arguments, the court has determined that MeterLogic has successfully pled its claim for fraud.

### 1. Federal Rule of Civil Procedure 9(b)

CS and TS move to dismiss count I of MeterLogic's complaint, arguing that MeterLogic has failed to properly plead its fraud claim as required by Federal Rule of Civil Procedure 9(b).[10] Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). This rule "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Business Management Assoc.*, 847 F.2d 1505, 1511 (11th Cir.1988) (quoting *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir.1984), cert. denied, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985)). Further, "Rule 9(b) must be read in conjunction with Rule 8(a) [of the Federal Rules of Civil Procedure], which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief." *O'Brien v. National Property Analysts Partners*, 719 F.Supp. 222, 225 (S.D.N.Y.1989) (citing *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 n. 20 (2d Cir.1979), cert. denied, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980)); see also *Durham*, 847 F.2d at 1511 ("The application of [Rule 9(b) ] must not abrogate the concept of notice pleading."); *Berk v. Ascott Inv. Corp.*, 759 F.Supp. 245, 254 (E.D.Pa.1991).

Rule 9(b) may be satisfied if the complaint sets forth:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, and

(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and

(3) the content of such statements and the manner in which they misled the plaintiff, and

(4) what the defendants "obtained as a consequence of the fraud."

*Medalie v. FSC Securities Corp.*, 87 F.Supp.2d 1295, 1306 (S.D.Fla.2000); see also *Durham*, 847 F.2d at 1512 ("Allegations of date, time, or place satisfy the Rule 9(b) requirement that circumstances of the alleged fraud must be plead with particularity...."); *Leonard v. Stuart–James Co.*, 742 F.Supp. 653, 659 (N.D.Ga. 1990) (granting motion to dismiss granted where complaint failed to allege "specifically when, where, by whom, or specifically what the representation was").

When pleading fraud, the plaintiff generally should specifically identify the individuals who made the alleged misrepresentations, the time of the alleged fraud, and the place of the alleged fraud. *See Anthony Distributors, Inc. v. Miller Brewing Co.*, 904 F.Supp. 1363, 1365 (M.D.Fla.1995). The plaintiff should also quote or paraphrase the alleged fraudulent misrepresentations made by the defendant. *See Metrahealth Ins. Co. v. Anclote Psychiatric Hosp., Ltd.*, No. 96–2547–CIV–T–17C, 1997 WL 728084, at * 2 (M.D.Fla. Oct. 23, 1997). However, "alternative means are also available to satisfy the rule." *Durham*, 847 F.2d at 1512 (citing *Seville Indus.*, 742 F.2d at 791 (list containing allegations of fraud describing nature and subject of statements found to be sufficient, even where precise words used were not alleged)). Nevertheless, courts recognize that if the alleged fraud occurred over an extended period of time and the acts were numerous, the specificity

requirements are applied less stringently. *See Anthony Distrib., Inc.*, 904 F.Supp. at 1366. This relaxed requirement is used where "strict application of Rule 9(b) could result in substantial unfairness to private litigants who could not possibly have detailed knowledge of all the circumstances surrounding the alleged fraud." *NCR Credit*, 155 F.R.D. at 692. This does not negate the plaintiff's duty to adequately plead the contents of the alleged fraudulent representations and the places where the activity was to have occurred. *See Anthony Distrib., Inc.*, 904 F.Supp. at 1366. The court reviews the defendant's' motion against these standards.

■■ According to CS and TS, MeterLogic has failed to comply with these standards because its allegations are too vague to satisfy Rule 9(b). The court has reviewed the record and agrees with MeterLogic that its allegations are pleaded with sufficient particularity. MeterLogic's allegations of fraud are contained in paragraphs 32 through 36 of the complaint. In sum, MeterLogic states that Hawley and Dobell told MeterLogic that KCPL, KLT, and KLT, Inc. were firmly behind the business venture that was going to be formed between MeterLogic and CS and TS; that the corporate parents owned the technology that the business venture required; and that the technology was readily available for MeterLogic's use during the course of the venture. Each of these allegations are accompanied by dates that range from December 31, 1998 to June 29, 1999. The factual allegations common to all counts specify the places where the statements were made. MeterLogic also states that, as a consequence of these representations by CS and TS, it "agreed to go forward with the Agreements and did not seek out other business partners with whom to conduct business.... [and] suffered damages and will continue to suffer

damages in an amount in excess of Fifty Million ($50,000,000.00) Dollars." Pl. Am. Compl. at ¶¶ 42, 43.

These allegations provide CS and TS with sufficient information to satisfy the heightened pleading requirement of Rule 9(b). MeterLogic has given the defendants the "who, what, where, and when" of the alleged fraud that took place. While MeterLogic need not provide the exact time and place of all the meetings, it does provide this information for some of the statements. In any event, it supplies a sufficiently narrow time frame from which CS and TS could be on notice as to when these statements were made. Accordingly, the defendants' motion to dismiss MeterLogic's fraud claim for failure to comply with Federal Rule of Civil Procedure 9(b) is denied.

### 2. The Economic Loss Rule

■■ As an alternative theory, CS and TS move to dismiss Count I of MeterLogic's complaint by arguing that the fraud claim is barred by the economic loss rule.[11] In *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238, 1240 (1996), the Supreme Court of Florida recognized that fraud can be an independent tort not barred by the economic loss rule.[12] The court noted that:

> [f]raud in the inducement presents a special situation where parties to a contract appear to negotiate freely—which normally would constitute grounds for invoking the economic loss doctrine—but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior....
>
> The distinction between fraud in the inducement and other kinds of fraud is the same as the distinction drawn by a New Jersey federal district court between

---

**11.** CS and TS also argue that the economic loss rule bars MeterLogic's negligent misrepresentation and promissory estoppel claims. The following analysis applies to those claims as well.

**12.** Because the court's jurisdiction is based on diversity of citizenship, Florida substantive law governs MeterLogic's tort claims. *See Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir.2000).

fraud extraneous to the contract and fraud interwoven with the breach of contract. With respect to the latter kind of fraud, the misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort.

*Id.* (citing *Huron Tool & Eng'g Co. v. Precision Consulting Servs.*, 209 Mich. App. 365, 532 N.W.2d 541, 545 (1995)). The court in *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So.2d 74, 77 (1997) added that one cannot avoid the economic loss rule by merely labeling a claim as fraud. The fraud must be separate and distinct from the breaching party's performance of the contract.

In this case, the plaintiff's fraud claim is sufficient to survive the economic loss rule because MeterLogic has shown, for purposes of these motions to dismiss, that CS's and TS's alleged fraud is separate and distinct from their performance of the agreements. CS and TS argue that MeterLogic has failed to plead a case for a tort independent of the alleged breach of contract, but a careful review of MeterLogic's amended complaint refutes the defendants' argument. MeterLogic's complaint alleges that prior to the date the parties entered into their agreements, agents of the defendants made material misrepresentations on which MeterLogic relied to induce them to enter into the agreements. *See* Pl. Am. Compl. at ¶¶ 32–35. Included among the misrepresentations were CS's and TS's promises to develop, manufacture, provide, and service certain technology. CS and TS are correct in arguing that these representations, which are part of MeterLogic's fraud claim, are the same allegations that form the breach of contract claim. *See* Pl. Am. Compl. at ¶ 32. It is also true, however, that CS and TS allegedly made some

statements that were not part of the contract. The most important representation being that KCPL, KLT, and KLT, Inc. "were firmly behind their proposed business arrangements, ..., had funded the development ... of the technology, ... [and] owned the technology...." Pl. Am. Compl. at ¶¶ 32, 33. These statements were not embodied in the parties' contracts, and they are the types of allegations that fall under the justification for the fraud exception to the economic loss rule described in *Hotels*. The ability of MeterLogic to negotiate fair terms and make a truly informed decision has been undermined by these misrepresentations. For example, had MeterLogic known that KCPL, KLT, and KLT, Inc. were not really behind the contracts, MeterLogic could have protected itself by agreeing to different terms or refusing to enter into the agreements altogether.

To the extent that CS and TS induced MeterLogic into signing a contract based upon a promise that their corporate parents would ensure the success of the business venture, MeterLogic's fraud claim can be maintained. Accordingly, MeterLogic's fraud claim survives the economic loss rule defense, and the defendants' motion to dismiss Count I under the economic loss rule is denied.

### 3. The Integration Clause

 As a third basis for their motions to dismiss, CS and TS argue that the parties' March 31 contract contains an integration clause that bars MeterLogic's recovery for fraud.[13] According to the defendants, MeterLogic's fraud claim must fail as a matter of law because the integration clause incorporates all representations made prior to this agreement.[14] MeterLogic correctly points out that such

---

**13.** CS and TS also argue that the integration clause bars MeterLogic's negligent misrepresentation and promissory estoppel claims. The following analysis applies to those claims as well.

**14.** The integration clause states, "It is expressly agreed that this document embodies the entire agreement of the parties, and that no other understanding or agreement, verbal or otherwise, exists between the parties, except as herein expressly set forth...." Pl. Amend. Compl., Ex. A. at ¶ 14.

integration clauses do not "cloak defendants with immunity" from fraudulent statements. Florida law is clear that if a party alleges that a contract was procured by fraud or misrepresentation as to a material fact, an integration clause will not make the contract incontestable, and the oral representations may be introduced into evidence to establish fraud. *See Acquisition Corp. of Am. v. Federal Deposit Ins. Corp.,* 760 F.Supp. 1558, 1561 n. 6 (S.D.Fla.1991); *Bird Lakes Development Corp. v. Meruelo,* 626 So.2d 234, 238 (1993); *Ortiz v. Orchid Springs Development Corp.,* 504 So.2d 510 (1987). In its complaint, MeterLogic has alleged that CS and TS made fraudulent statements regarding the economic and technological support from their corporate parents that induced MeterLogic to enter into three agreements with the defendants. Such an allegation defeats the defendants' argument. As such, CS's and TS's motion to dismiss based upon the presence of an integration clause is denied.

### 4. Elements of Fraud

■ As their final argument to support their motion to dismiss MeterLogic's fraud claim, CS and TS contend that MeterLogic has failed to plead the elements of fraud. In order for a plaintiff to satisfactorily allege a case for fraud, the plaintiff must plead: (1) a false statement or misrepresentation of material fact; (2) the representor's knowledge at the time the misrepresentation is made that the statement is false; (3) an intention that the misrepresentation induce another to act; (4) action in justifiable reliance on the representation; and (5) resulting damage or injury. *See Bailey v. Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.,* 938 F.Supp. 825, 829 (S.D.Fla.1996); *Johnson v. Davis,* 480 So.2d 625, 627 (1985).

■ According to CS and TS, MeterLogic has not alleged the fourth element—that it took any action in justifiable reli-

ance on the defendants' representations. MeterLogic has, in fact, alleged the requisite action. In its amended complaint, it states, "As a result of the intentional misrepresentations and/or omissions by CS, TS, KLT, KLT, Inc., and [KCPL], and each of them, MeterLogic agreed to go forward with the Agreements and did not seek out other business partners with whom to conduct this business." Pl. Am. Compl. at ¶ 42. Because this allegation shows that MeterLogic has done something in reliance on the defendants' representations and because MeterLogic has otherwise pled the remaining elements of fraud, CS's and TS's motion to dismiss MeterLogic's fraud count is denied.

### C. Negligent Misrepresentation

■ In addition to the grounds discussed above, CS and TS contend that the court should dismiss MeterLogic's negligent misrepresentation count, Count II, because it has failed to plead all the elements of such a claim. In order to state a claim for negligent misrepresentation, a plaintiff must allege the following: (1) a misrepresentation of material fact; (2) that the representor either knew or should have known was false or made without knowledge of truth or falsity; (3) the representor intended to induce another to act on the misrepresentation; and (4) resulting injury to a party acting in justifiable reliance on the misrepresentation. *See Souran v. Travelers Ins. Co.,* 982 F.2d 1497, 1503 (11th Cir.1993) (citing *Hoon v. Pate Constr. Co., Inc.,* 607 So.2d 423, 427 (1992)).

■ As with the fraud count, CS and TS argue that MeterLogic has not stated a claim for negligent misrepresentation because it has not alleged it took any action in reliance on their statements.[15] A plaintiff is not required to describe the action it took with a high degree of specificity. It

---

15. CS and TS also seek to dismiss Count III for promissory estoppel on the grounds that MeterLogic has not alleged it took any action in reliance on the defendants' alleged prom-

ises. Like the defendants' arguments pertaining to the fraud and negligent misrepresentation counts, this argument fails for the reasons discussed herein.

is enough for a plaintiff to allege, as MeterLogic has, that the defendant was aware the plaintiff would rely on the defendant's representations and that the plaintiff did in fact rely on them by, for example, entering into a contract with the defendant. *See Florida Women's Med. Clinic, Inc. v. Sultan,* 656 So.2d 931, 933 (1995) (holding that allegation that plaintiff relied on defendant's representation by entering into a lease with it stated valid cause of action for negligent misrepresentation). Under its negligent misrepresentation count, MeterLogic states it "did not seek out other business partners with whom to conduct this business." Pl. Amend. Compl. at ¶ 41. By reference to its fraud count, it incorporates the allegation that it also was induced into entering the agreements with CS and TS.[16] These allegations are sufficient to show action by MeterLogic.

Finally, CS and TS argue that MeterLogic has failed to satisfactorily plead the element of action because its allegation that it refrained from seeking other business opportunities does not constitute a detrimental change of position. According to the defendants, because MeterLogic was already contractually obligated to represent CS and TS exclusively, it could not have suffered any damages when it refrained from entering into other business ventures. While the defendants' argument may be legally valid, *see Eclipse Medical, Inc. v. American Hydro–Surgical Instruments, Inc.,* No. 96–8532, 1999 WL 181412, *13 (S.D.Fla. Jan. 20, 1999) (denying promissory estoppel claim where contract obligated plaintiff to deal exclusively with defendant, an action that plaintiff claimed was the result of its detrimental reliance on defendant's representations), it is not properly before the court at this time. Nothing in MeterLogic's complaint com-

pels the conclusion that the parties' agreement prevented MeterLogic from seeking other opportunities. As such, the court must deny the defendants' motion to dismiss Count II for negligent misrepresentation.

### D. Promissory Estoppel

■ CS and TS seek to dismiss Count III (promissory estoppel) for all of the reasons stated above, but the court has found that none of those arguments warrant dismissal. As a final argument in support of their motion to dismiss the promissory estoppel count, CS and TS contend that Florida does not allow an action for promissory estoppel where the alleged agreement would be invalid under the statute of frauds. *See Tanenbaum v. Biscayne Osteopathic Hosp., Inc.,* 190 So.2d 777, 779 (1966) (establishing rule that promissory estoppel would not be adopted as counterclaim to statute of frauds). This principle does not apply to this case for two reasons. First, the parties entered into three written contracts that satisfy the statute of frauds. Second, the alleged misrepresentations that involve KCPL, KLT, and KLT, Inc. could have been performed within one year and, therefore, do not fall under the statute of frauds. For example, CS and TS could have fulfilled their promises within one month of having made them by assuring that KCPL, KLT, and KLT, Inc. did in fact provide the technological and economic support that CS and TS claimed they would provide. Because MeterLogic has stated a claim for promissory estoppel, CS's and TS's motion to dismiss Count III is denied.

### E. Indemnity

■ Count IV of MeterLogic's complaint is a claim for indemnity against CS

---

**16.** The defendants argue that MeterLogic has not incorporated all of the paragraphs of its fraud count into its negligent misrepresentation count because that count incorporates only paragraphs 1 through 31, of a 42 paragraph count. This is a typographical error by MeterLogic because its negligent misrepre-

sentation count, which immediately follows its fraud count, begins with paragraph 32. MeterLogic apparently has misnumbered its paragraphs, but it is clear from the rest of its complaint that each paragraph of the complaint was meant to be incorporated into the following count.

and TS. According to MeterLogic's complaint, CS and TS entered into an indemnification agreement whereby CS and TS agreed to indemnify MeterLogic for all losses, damages, or expenses incurred as a result of the defendants' acts. Pl. Amend. Compl. at ¶ 43. CS and TS correctly point out that indemnity does not apply to this case. Florida defines indemnity as "a right which enures to one who discharges a duty owed by him, but which, as between himself and another, should have been discharged by the other." *Florida Power & Light v. Allis–Chalmers Corp.,* 752 F.Supp. 434, 441 (S.D.Fla.1990) (quoting *Houdaille Indus., Inc. v. Edwards,* 374 So.2d 490, 492–93 (1979)). This theory of recovery applies only "where the liability of the person seeking indemnity is solely constructive or derivative and only against one who, because of his act, has caused such constructive liability to be imposed." *Houdaille Indus., Inc.,* 374 So.2d at 493; *see also Seitlin & Co. v. Silber,* 650 So.2d 624, 627 (1995).

■ The facts of this case as pled do not satisfy these descriptions. In order for CS and TS to be liable to MeterLogic under an indemnity theory, MeterLogic would need to allege that CS's and TS's liability is only vicarious, constructive, derivative, or technical and based upon an actual wrongdoing or breach of contract by MeterLogic. *See Olnick v. Robert Myers Painting, Inc.,* 384 So.2d 54, 55 (1980) (stating necessary allegations). MeterLogic has not made such an allegation, and the evidence would not support such a fact. MeterLogic's claims are based on allegations that CS and TS are the wrongdoers. There is no evidence from which a court can conclude that MeterLogic committed a wrong or breached a contract. In short, this case does not present a situation where indemnification would be appropriate. Accordingly, MeterLogic's claim for indemnity must be dismissed.

It is therefore

**ORDERED AND ADJUDGED THAT:**

1) Defendant KCPL's motion to dismiss for lack of personal jurisdiction (DE # 70) is GRANTED.

2) Defendant KLT's motion to dismiss for lack of personal jurisdiction (DE # 9) is GRANTED.

3) Defendant KLT, Inc.'s motion to dismiss for lack of personal jurisdiction (DE # 67) is GRANTED.

4) Defendants CS's and TS's motion to dismiss Counts I, II, III, and V of the plaintiff's complaint (DE # 8) is DENIED.

5) Defendants CS's and TS's motion to dismiss Count IV of the plaintiff's complaint (DE # 8) is GRANTED.

6) Count VI is dismissed for lack of personal jurisdiction over defendants KCPL, KLT, and KLT, Inc.

7) Counts I, II, III, and V remain pending against defendants CS and TS.